26 F.3d 1573
 63 USLW 2016, 31 U.S.P.Q.2d 1001
 Robert L. MENDENHALL and CMI Corporation, Plaintiffs-Appellants,
v.
BARBER-GREENE COMPANY, Defendant/Cross-Appellant.
Robert C. MENDENHALL and CMI Corporation, Plaintiffs-Appellees,
v.
ASTEC INDUSTRIES, INC., Defendant-Appellant.
 Nos. 91-1109, 91-1131, 91-1317 and 92-1244.
 United States Court of Appeals,
Federal Circuit.
 June 8, 1994.
As Corrected on Grant of Rehearing
Sept. 14, 1994.
 
 Richard S. Florsheim, Foley & Lardner, Milwaukee, WI, argued for plaintiffs-appellants in Nos. 91-1109, -1131, and plaintiffs-appellees in Nos. 91-1317 and 92-1244. Jerry J. Dunlap and Gary Peterson, Dunlap, Codding & Lee, P.C., Oklahoma City, OK, were on the briefs for plaintiffs-appellants and plaintiffs-appellees. George E. Quillin, Foley & Lardner, Alexandria, VA, represented plaintiffs-appellants and plaintiffs-appellees. Fred H. Bartlit, Jr. and Mark E. Ferguson, Kirkland & Ellis, Chicago, IL, represented plaintiffs-appellants and plaintiffs-appellees. Phillip C. Swain, Kirkland & Ellis, Los Angeles, CA, represented plaintiffs-appellants and plaintiffs-appellees.
 Richard W. Bethea, Jr., Stophel & Stophel, P.C., Chattanooga, TN, argued for defendant/cross-appellant in Nos. 91-1109, -1131 and defendant-appellant in Nos. 91-1317 and 92-1244. With him on the brief was Andrew J. Nilles, Nilles & Nilles, S.C., Milwaukee, WI.
 Jerry J. Dunlap, Dunlap, Codding & Lee, P.C., of Oklahoma City, OK, Richard S. Florsheim and George E. Quillin, Foley & Lardner, of Milwaukee, WI, Attorneys for plaintiffs-appellees and plaintiffs-appellants, were on the Combined Petition of Robert L. Mendenhall and CMI Corporation, for Rehearing and Suggestion for Rehearing In Banc.
 Andrew J. Nilles, Nilles & Nilles, S.C., of Milwaukee, WI and Richard W. Bethea, Jr., Stophel & Stophel, P.C., of Chattanooga, TN, Attorneys for Astec Industries, Inc. and Barber-Greene Company, were on the Response to Petition for Rehearing and Suggestion for Rehearing In Banc.
 Before NIES,* MAYER and LOURIE, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 Appellants, Astec Industries, Inc., and its subsidiary Barber-Greene Company, invoke principles of collateral estoppel as enunciated in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), as the basis for overturning the judgments against each of them, entered in separate suits for infringement of United States Patents No. Re. 31,904 ('904) and Re. 31,905 ('905), owned by Robert L. Mendenhall and his exclusive licensee CMI Corporation (collectively Mendenhall). The collateral estoppel defense arises from the final judgment of invalidity of the '904 and '905 patents entered in a suit against a third party. See Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 28 USPQ2d 1081 (Fed.Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). We hold that collateral estoppel applies. Accordingly, the district court judgments holding these defendants liable for infringement of the two Mendenhall patents are reversed. Other issues in these appeals are mooted by this disposition.
 
 I.
 BACKGROUND
 
 2
 The '904 and '905 patents in suit have been extensively litigated.[1] Mendenhall sued Barber-Greene in the United States District Court for the Northern District of Illinois and sued Astec in the United States District Court for the Eastern District of Tennessee. Astec counterclaimed for infringement of several patents it owned. During the litigation Astec acquired Barber-Greene, and Barber-Greene acknowledged that, as a subsidiary, it would be bound by the ruling respecting validity of the '904 and '905 patents in the Astec litigation and agreed that the issue would not be litigated in its case. Concurrently, Mendenhall began litigation against an unrelated party, Cedarapids, Inc., for infringement of the '904 and '905 patents in the United States District Court for the Northern District of Iowa. The Astec suit was the first to proceed to trial, inter alia, on the issue of validity of the '904 and '905 patents, damages having been bifurcated. Mendenhall moved for a stay of the Cedarapids case until the validity issue was resolved in Astec. The Astec trial resulted in a judgment in favor of Mendenhall respecting validity issues, and that judgment was affirmed by this court in an interlocutory appeal.[2] The stay of the Cedarapids proceedings was then lifted, and that case was tried to a jury on all issues, resulting in a judgment on March 4, 1991, of invalidity of all claims of both patents, except Claim 13 of the '904 which was found not infringed. At the time the Cedarapids judgment of invalidity was entered, the Astec case was still pending before the Tennessee district court for determination of damages and other issues. Astec promptly moved to vacate the previously entered unfavorable liability judgment on the ground that Mendenhall was collaterally estopped from continuing to assert the patents under Blonder-Tongue, supra, and decisions of this court, particularly, Dana Corp. v. NOK, Inc., 882 F.2d 505, 11 USPQ2d 1883 (Fed.Cir.1989), and Thompson-Hayward Chemical Co. v. Rohm & Haas Co., 745 F.2d 27, 223 USPQ 690 (Fed.Cir.1984). The trial court denied Astec's motion stating:
 
 
 3
 1. Astec's motion to modify the injunction in this cause is DENIED. [Doc. 356]
 
 
 4
 2. Astec's motion for entry of an order vacating the judgment of October 31, 1988 which was affirmed by the Federal Circuit is DENIED. [Doc. 366] This court finds that if the Iowa jury verdict is inconsistent with the judgment affirmed by the Federal Circuit in this cause, that conflict should be resolved by the Federal Circuit when the Iowa verdict goes up on appeal.
 
 
 5
 Astec filed an interlocutory appeal (No. 91-1317) under 28 U.S.C. Sec. 1291(c)(1), which was stayed on Mendenhall's motion. After consideration of post-trial motions and entry of a final judgment by the Astec trial court on all claims and counterclaims, Astec again appealed, asserting error in the district court's ruling on the collateral estoppel issue as well as on various damages issues (No. 92-1244). These two appeals were consolidated. Mendenhall filed no appeal of the adverse judgment on Astec's counterclaims. The judgment was stayed pending appeal.
 
 
 6
 Meanwhile, Mendenhall appealed the final judgment in favor of the defendant in the Cedarapids case to this court, asserting a right to a new trial because the Cedarapids trial court allegedly erred in excluding the opinion of the Astec judge as probative evidence in the Cedarapids case and in improperly instructing the jury. Mendenhall did not appeal the trial court's denial of its JNOV (now JMOL) motion on any issues. On September 13, 1993, this court rendered its decision affirming the Cedarapids judgment holding invalid claims 1-12 of '904 and all claims of '905 for obviousness and public use. In addition, this court ruled on Cedarapids cross-appeal that claim 13 of the '904 patent was also invalid.[3] In making its ruling in the Cedarapids appeal, this court took into account the prior validity decision in the Astec proceedings. Indeed, the effect to be given the Astec opinion of the district court and the decision of this court respecting validity was the major issue in Cedarapids. As a result of the Cedarapids litigation, all claims of both the '904 and '905 patents have now been finally adjudged invalid.
 
 
 7
 The Barber-Greene trial had been stayed pending the interlocutory appeal of validity issues in Astec. Upon affirmance in that appeal, the Barber-Greene case proceeded to trial on the issues of infringement, Barber-Greene was held liable and damages and an injunction were awarded. It was not until the Barber-Greene case was on appeal that the Cedarapids district court entered a final judgment holding all of the claims which Mendenhall had asserted against Barber-Greene invalid.[4] The issue of collateral estoppel in Barber-Greene has, therefore, been raised for the first time on appeal.
 
 
 8
 The Barber-Greene, Astec, and Cedarapids appeals were heard on the same day but were not consolidated for disposition. As indicated, the Supreme Court denied review of the Cedarapids judgment holding the '904 and '905 claims invalid and the mandate in that case has issued. The Astec and Barber-Greene appeals are now consolidated for disposition.
 
 II.
 A. Blonder-Tongue and Its Progeny
 
 9
 In Blonder-Tongue, supra, the Supreme Court ruled that once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel. Mutuality of estoppel is no longer required. Thus, the benefits of collateral estoppel (now generally termed issue preclusion) arising from a final judgment of patent invalidity were extended to an alleged infringer other than the defendant who earlier successfully litigated the matter and those in privity therewith.
 
 
 10
 The final judgment in the Cedarapids case held that all claims of Mendenhall's '904 and '905 patents are invalid. Astec and Barber-Greene assert that the Cedarapids judgment should be given collateral estoppel effect in the infringement suits brought by Mendenhall against each of them. The defense of collateral estoppel clearly would have been available to these defendants had their cases been stayed until the Cedarapids case proceeded to its ultimate judgment holding the '904 and '905 patents wholly invalid. Instead, the Cedarapids case was stayed while the others proceeded. Thus, the invalidity judgment in Cedarapids was entered just prior to entry of final judgment by the trial court in the Astec suit and only after appeal to this court in Barber-Greene. Mendenhall asserts, in essence, that these cases are too far along for appellants to invoke collateral estoppel. Except for timeliness and variations of that argument, Mendenhall suggests no grounds for averting the application of collateral estoppel to its claims against these appellants. For reasons that follow, we reject Mendenhall's arguments on timeliness and collateral issues and hold that collateral estoppel applies. It would be contrary to the policies expressed in Blonder-Tongue were this court now to enter the judgments Mendenhall seeks in these appeals. For this court to affirm the findings of infringement and the willfulness of conduct against one appellant, increase damages against the other, and uphold injunctions against both, appears anomalous in the extreme in connection with patents this court has just held invalid.
 
 
 11
 Because its patents are invalid and were determined to be invalid after full and fair litigation,[5] Mendenhall is collaterally estopped from recovering for infringement of those patents in these pending cases.
 
 B. Timeliness
 
 12
 Appellants' position is that under the precedent of this court, the defense of collateral estoppel based on a patent invalidity judgment in another case may be raised at any time during the pendency of proceedings, even for the first time on appeal, citing Dana Corp. v. NOK, Inc., 882 F.2d 505, 11 USPQ2d 1883 (Fed.Cir.1989), and Thompson-Hayward Chemical Co. v. Rohm & Haas Co., 745 F.2d 27, 223 USPQ 690 (Fed.Cir.1984), and that the Cedarapids judgment creates such an estoppel. Accordingly, the judgments of the district courts holding Astec and Barber-Greene liable should be reversed.
 
 
 13
 In the earlier of the cited authority, collateral estoppel was raised by the alleged infringer, Thompson-Hayward, based on a holding by this court in a suit against Dawson Chemical Company that Rohm and Haas's patent was unenforceable. Rohm & Haas Co. v. Crystal Chem. Co., 722 F.2d 1556, 1573, 220 USPQ 289, 302 (Fed.Cir.1983), rev'g Rohm & Haas Co. v. Dawson Chem. Co., 557 F.Supp. 739, 217 USPQ 515 (S.D.Tex.1983). This court's judgment in the Dawson appeal, which reversed the district court, was rendered during Thompson-Hayward's appeal of a final judgment holding it liable for infringement of the same patent. Like Barber-Greene in this case, Thompson-Hayward had not separately attacked the patent but agreed it would be bound by the judgment in the other case. In upholding the collateral estoppel defense, this court rejected the argument that Thompson-Hayward could not raise the defense because it had never challenged the validity of the patent at trial. This court ruled:
 
 
 14
 In Lear, Inc. v. Adkins, 395 U.S. 653 [89 S.Ct. 1902, 23 L.Ed.2d 610] 162 USPQ 1 (1969) the Supreme Court overturned the doctrine of licensee estoppel. The Court noted "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain" [citation omitted]. In Lear, the public's interest in allowing challenges to invalid patents was determined to prevail over the principles of contract law.... [W]e deem this public interest [in candor during patent prosecution] to be paramount over the proprieties of pleading practice.
 
 
 15
 745 F.2d at 32-33, 223 USPQ at 694. Drawing no distinction between invalidity and unenforceability, the court held that the public interest compelled the conclusion that Thompson-Hayward should be permitted to obtain the benefit of the unenforceability decision of the Dawson case even though the defense was raised for the first time on appeal and even though Thompson-Hayward had not challenged the patent at trial. The liability judgment and damages award were vacated.
 
 
 16
 Similarly, in the Dana v. NOK case, supra, collateral estoppel was raised for the first time on appeal. The NOK district court had held the Dana patent not invalid and found NOK to be an infringer. In a separate action instituted by Dana against IPC Ltd. Partnership, the same patent was similarly held by the district court to be not invalid and to be infringed. Dana Corp. v. IPC Ltd. Partnership, 5 USPQ2d 1535, 1536-38, 1987 WL 125110 (E.D.Mich.1987). During pendency of the NOK appeal, this court reversed the IPC district court and held that the patent failed to comply with the best mode requirement of 35 U.S.C. Sec. 112. 860 F.2d 415, 420, 8 USPQ2d 1692, 1696-97 (Fed.Cir.1988), cert. denied, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).
 
 
 17
 NOK raised the collateral estoppel issue in its appeal, arguing that this court's determination of invalidity of the patent in the IPC case required reversal of the judgment in its case as well. This court summarized the opposing position as follows:
 
 
 18
 Dana argues that the application of Blonder-Tongue should be limited to situations in which invalidity is decided in another case and that determination occurs before the trial court's decision in the case in which collateral estoppel is raised.
 
 
 19
 NOK, 882 F.2d at 507, 11 USPQ2d at 1884 (emphasis added). In rejecting this contention, the court stated:
 
 
 20
 [W]e see no reason why estoppel cannot be raised during the pendency of an appeal....
 
 
 21
 Nothing in Blonder-Tongue indicates that timing of the decision giving rise to estoppel is critical or that the plea of that defense cannot thereafter be timely made at any stage of the affected proceedings. Thus, we see no reason for declining to permit estoppel to be raised in this case.
 
 
 22
 Id. (emphasis added).
 
 
 23
 Mendenhall argues that the controlling authority applicable here should be the earlier case of Jamesbury v. United States, 217 Ct.Cl. 658, 198 USPQ 455, 1978 WL 8431 (1978),[6] in which one of our predecessor courts summarily rejected a collateral estoppel defense based on a district court judgment of invalidity of the patent in suit. In the Jamesbury proceedings before the Court of Claims, two trials on liability had been conducted over a 15-year period and the decision had been affirmed at the appellate level of the court when the collateral estoppel defense arose as a result of the district court's decision in Jamesbury v. Litton Indus. Prods., Inc., 442 F.Supp. 266, 270, 196 USPQ 544, 547 (D.Conn.1977) (claims held invalid because of "overclaiming"). Only damages remained to be tried. Mendenhall concludes from Jamesbury that a collateral estoppel defense is untimely and, therefore, precluded after the second defendant's liability has been affirmed by an appellate court.
 
 
 24
 We disagree that Jamesbury states such a rule of law or that the Thompson-Hayward and NOK decisions conflict with Jamesbury. The explication of the Court of Claims for rejecting the collateral estoppel defense in Jamesbury is very brief. The court did state, inter alia, that the district court decision holding the patent invalid was wrong (217 Ct.Cl. at 659-60, 198 USPQ at 455), a conclusion borne out by the Second Circuit's ultimate reversal. Jamesbury Corp. v. Litton, 586 F.2d 917, 199 USPQ 641 (2d Cir.1978), cert. denied, 440 U.S. 961, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979). Before the decision of this court and the Supreme Court's denial of review, reversal of the invalidity decision in Cedarapids, as in Jamesbury, was a possibility which is the reason for the Astec court's denial of the motion to apply estoppel. That possibility no longer exists.[7]
 
 
 25
 In any event, contrary to Mendenhall's argument, Jamesbury lays down no rule which makes the collateral estoppel defenses in these cases too late as a matter of law.[8] Rather, our precedent holds that the defense of collateral estoppel based on a final judgment of patent invalidity in another suit can "be timely made at any stage of the affected proceedings." Dana Corp. v. NOK, 882 F.2d at 507, 11 USPQ2d at 1884; Thompson-Hayward Chemical Co. 745 F.2d at 32-33, 223 USPQ at 694 (estoppel given invalidity judgment on appeal even though infringer did not challenge validity at trial). Cf. Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 298-99, 37 S.Ct. 506, 507-08, 61 L.Ed. 1148 (1917) (patent invalidity decision of Sixth Circuit in favor of manufacturing corporation barred Seventh Circuit from upholding patent in separate suit against company in privity and was properly raised on appeal).
 
 
 26
 We conclude that appellants' defense of collateral estoppel is not untimely. Each appellant raised the issue during pending litigation at virtually the earliest possible date.[9]
 
 
 27
 C. Effect of Interlocutory Astec Liability Judgment
 
 
 28
 Mendenhall presents a variation of its argument that proceedings here are too far advanced for redetermination of liability by attempting to invoke a novel kind of res judicata within a case. Mendenhall argues that collateral estoppel should not apply here because this Court would have to overturn its own prior decision affirming the validity of the '904 and '905 patents in Astec. It distinguishes the Thompson-Hayward and NOK decisions on the ground that collateral estoppel was invoked before a liability finding against the defendant had been upheld on appeal and urges our prior Astec judgment respecting liability was final and precludes relitigation of that issue as a matter of law.
 
 
 29
 First, the issue on appeal technically is not whether this court's prior holding respecting validity in Astec should be overturned. The issue in Astec's appeal (which also controls in Barber-Greene ) is the viability of a collateral estoppel defense which arose subsequently.[10] As Thompson-Hayward and NOK hold, collateral estoppel, based on the success of a third party, may preclude liability despite the failure of an accused infringer to prove invalidity in its own trial. Further, this court did not rule that the patents were "valid" in its prior Astec judgment but rather ruled that Astec failed to establish the merits of its defenses of inequitable conduct and invalidity. Thus, this court did not "overturn" its prior Astec rulings respecting validity by the Cedarapids judgment of invalidity, and it does not do so here by recognizing the overriding defense of collateral estoppel.
 
 
 30
 Secondly, the judgment of this court on liability in Astec resulted in a remand for further proceedings. It was not the final judgment in the case. To rise to that level, the litigation must be entirely concluded so that Mendenhall's cause of action against Astec was merged into a final judgment. Restatement (Second) of Judgments Sec. 13 (1982). A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). A judgment on an appeal under Sec. 1292(c)(2) allowing interlocutory appeals of liability judgments in patent cases does not end the litigation.[11] See Johns-Manville v. Guardian Indus. Corp., 116 F.R.D. 97, 101, 4 USPQ2d 1723, 1725 (E.D.Mich.1987) (request to open judgment of liability affirmed by the Federal Circuit not reviewed under Rule 60(b) standard; judgment was interlocutory). The purpose of Sec. 1292(c)(2) is to permit district courts to stay and possibly avoid a burdensome determination of damages. In re Calmar, 854 F.2d 461, 464, 7 USPQ2d 1713, 1714-15 (Fed.Cir.1988) (citing H.R.Rep. No. 1890, 69th Cong., 2 Sess. 1 (1927)). This provision for interlocutory appeal does not render a district court decision on fewer than all issues in the case a "final" decision. As the Supreme Court has noted regarding this statute's predecessor:
 
 
 31
 Although the interlocutory decision of the Court of Claims on the question of validity and infringement was appealable, United States v. Esnault-Pelterie, 299 U.S. 201, 303 U.S. 26 [57 S.Ct. 159, 58 S.Ct. 412, 81 L.Ed. 123, 82 L.Ed. 625]; 28 U.S.C. Sec. 288(b), as are interlocutory orders of district courts in suits to enjoin infringement, 28 U.S.C. Sec. 227(a); Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 89 [42 S.Ct. 196, 198-99, 66 L.Ed. 475 (1922) ], the decision was not final until the conclusion of the accounting. Barnard v. Gibson, 7 How. 649 [12 L.Ed. 857 (1849) ]; Humiston v. Stainthorp, 2 Wall. 106 [17 L.Ed. 905 (1864) ]; Simmons Co. v. Grier Bros. Co., supra, [258 U.S. at] 89 [42 S.Ct. at 198-99]. Hence the court did not lack power at any time prior to entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case.
 
 
 32
 Marconi Wireless Co. v. United States, 320 U.S. 1, 47, 63 S.Ct. 1393, 1415, 87 L.Ed. 1731 (1943).
 
 
 33
 It follows that a decision by an appellate court on an interlocutory appeal is no more final than the appealed decision itself. In the Simmons case, cited and relied upon by the Marconi court, the Supreme Court unequivocally rejected that view:
 
 
 34
 The decree of July 24, 1914, although following a "final hearing", was not a final decree. It granted to plaintiffs a permanent injunction upon both grounds, but an accounting was necessary to bring the suit to a conclusion upon the merits. An appeal taken to the Circuit Court of Appeals, whose jurisdiction, under Sec. 129 Judicial Code, extended to the revision of interlocutory decrees granting injunctions, followed by the decision of that court reversing in part and affirming in part, did not result in a decree more final than the one reviewed.
 
 
 35
 258 U.S. 82, 89, 42 S.Ct. 196, 199, 66 L.Ed. 475 (1922) (emphasis added).[12]
 
 
 36
 Similarly, in a case involving an interlocutory judgment of liability that had been appealed and affirmed under the predecessor to Sec. 1292(c)(2), the Supreme Court, citing Marconi, suggested that the proceedings could be reopened by the district court despite that judgment to consider allegations of misuse raised after appeal. McCullough v. Kammerer Co., 331 U.S. 96, 99, 67 S.Ct. 1165, 1167, 91 L.Ed. 1365 (1947).
 
 
 37
 Every case of which we are aware that has considered the "finality" of a district court liability judgment appealable under Sec. 1292(c)(2) and its predecessors has characterized such judgments as "interlocutory" in the context of the entire case.[13] Indeed, the very caption under which this section is codified is styled "Interlocutory decisions." The judgment of this court in the prior Astec appeal was therefore also interlocutory. The same litigation continued before the trial court after that judgment and is once again before us. Absent a final judgment ending the litigation, the issue of liability is not barred from reconsideration. Thus, the application of collateral estoppel in this case is not precluded by reason of the entry of a final judgment.[14]
 
 
 38
 Contrary, to Mendenhall's argument, our prior judgment respecting liability merely invokes concepts of law of the case. The law of the case does not involve preclusion after final judgment, but rather it regulates judicial affairs before final judgment. 18 Charles A. Wright, et al., Federal Practice and Procedure Sec. 4478 (1981). It is a doctrine resting on the need for judicial economy. A court will not generally revisit an issue once decided in the litigation. "Although courts are often eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish." Id. Thus Justice Holmes has stated that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). See also Slotkin v. Citizens Cas. Co., 614 F.2d 301, 312 (2d Cir.1979), cert. denied, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980) (doctrine "does not constitute a limitation on the court's power"); Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316, 1320 (5th Cir.1978), overruled on other grounds, Copper Liquor Inc. v. Adolph Coors Co., 701 F.2d 542 (5th Cir.1983) (doctrine not an "inexorable command" but "an expression of good sense and wise judicial practice."). The court has also noted that "there is a difference between [law of the case] and res judicata; one directs discretion, the other supersedes it and compels judgment." Southern Ry. Co. v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922). See also Arizona v. California, 460 U.S. 605, 618-19, 103 S.Ct. 1382, 1391-92, 75 L.Ed.2d 318 (1983).
 
 
 39
 The federal courts of appeals have recognized a variety of "special circumstances" under which they would reconsider their previously-determined law of the case. Intervening changes in applicable authority have been cited as a basis for reconsideration. Dean v. Trans World Airlines, Inc., 924 F.2d 805, 810 (9th Cir.1991) (Supreme Court decision changed applicable law); Miles v. Kohli & Kaliher Associates, Ltd., 917 F.2d 235, 242 (6th Cir.1990) (state Supreme Court decision changed applicable law in diversity case); Doe v. Arnig, 728 F.2d 30, 31 (1st Cir.1984) (decision by the same court of appeals changed applicable law); Wooster v. Handy, 21 F. 51, 53-54 (C.C.S.D.N.Y.1884) (decree of patent validity reconsidered after Supreme Court decisions relating to the validity of reissued patents). Similarly, courts have reconsidered their law of the case to avoid clear error or to prevent a manifest injustice. J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1200 (Fed.Cir.), cert. denied, 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988) (evidence of fraudulent procurement justified contract board's departure from law of the case established in previous liability appeal); Evans v. City of Chicago, 873 F.2d 1007, 1014 (7th Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990) (record reopened to consider a different equal protection theory); Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co., 578 F.2d 727, 734, 198 USPQ 257, 262 (8th Cir.1978) ("In view of our disposition of the case, we believe Wrist-Rocket I was in error on this point.... As a matter of equity to the parties and fairness to the public, neither party should use the trademark words in its corporate or company name.").
 
 
 40
 In Central Soya, Inc. v. George A. Hormel & Co., 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983), this court was asked to reconsider a decision of the Court of Appeals for the Tenth Circuit upholding a district court's judgment of liability, rendered on interlocutory appeal. In accordance with other circuits, we held the law of the case doctrine is a policy not a command even respecting a prior appellate decision in the case, and should be applied
 
 
 41
 as a matter of sound judicial practice, under which a court generally adheres to a decision in a prior appeal in the case unless one of three "exceptional circumstances" exists: the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.
 
 
 42
 723 F.2d at 1580, 220 USPQ at 495 (quoting Short v. United States, 661 F.2d 150, 154, 228 Ct.Cl. 535 (1981); Northern Helex Co. v. United States, 634 F.2d 557, 561, 225 Ct.Cl. 194 (1980)). See also Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc., 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed.Cir.), cert. denied, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985) (reconsideration of Fifth Circuit's decision affirming liability judgment rejected because of absence of "exceptional circumstances").
 
 
 43
 As indicated, in considering the new collateral estoppel defense, contrary to Mendenhall's argument, we are not in these appeals "revisiting" the merits of our decision respecting the issue of validity of the patents as presented in Astec. The issue of validity had to be and was "revisited" in Cedarapids. Thus, the policy behind law of the case that a court will not usually "revisit" a decided issue is not present here. But even if we consider appellants' liability as the law of the case, the question presented is whether the invalidity judgment in Cedarapids, as affirmed by this court, presents an "exceptional circumstance" warranting departure from the prior rulings that these defendants are liable to Mendenhall. In our view, clearly it is. The Cedarapids invalidity judgment, being intervening controlling authority on the relevant issue of law, would qualify as an exceptional circumstance under any articulated test. Further, when the rest of the industry is not impeded by the patents, it seems manifestly unjust to rely merely on "judicial economy" as justification for holding appellants liable and impairing their ability to compete. Just as in Lear v. Adkins, the public policy of full and free competition was deemed paramount over contract principles, 395 U.S. at 670, 89 S.Ct. at 1911, and in Blonder-Tongue outweighed the mutuality principles of estoppel, 402 U.S. at 345-47, 91 S.Ct. at 1451-52, 169 USPQ at 526, that same public policy clearly in our view takes precedence over adherence to law of the case, a matter which rests on discretion. Nor does the fact that the parties and the courts have expended time and effort in litigating validity in the Astec case avert the application of collateral estoppel. That is an unexceptional circumstance which is always present where the judgment creating the estoppel arises after a trial on the issue in the first case, and it was not seen as a reason for denial of estoppel in Dana v. NOK, 882 F.2d at 507, 11 USPQ2d at 1884. It will also always be true that the result in the first case will be favorable to the patentee. Otherwise, the alleged infringer would have no need to invoke collateral estoppel. Similarly, that Astec had a full and fair opportunity to litigate the issue of validity and lost is immaterial to its invoking estoppel on appeal. That was also true in Dana v. NOK, supra, where after losing at trial, NOK was given the benefit of collateral estoppel which arose from a decision of this court during its appeal. Cf. Hart Steel Co., 244 U.S. at 297, 37 S.Ct. at 507 (Supreme Court reversed court of appeals denial of preclusive effect of invalidity judgment in another case which arose during appeal of alleged infringer).
 
 
 44
 In sum, under any of Mendenhall's theories, the interlocutory judgment of this court and the proceedings in Astec do not preclude or provide policy reasons for denying collateral estoppel to the Cedarapids judgment in these appeals.
 
 D. Scope of Estoppel and Need for Remand
 
 45
 Mendenhall argues that even if the Astec judgment does not bar appellants as a matter of law from raising the defense of collateral estoppel, collateral estoppel may not be invoked respecting the '904 patent because the invalidity ruling on '904 was unnecessary to the Iowa judgment. Mendenhall notes that the Iowa defendant was found not to infringe the '904 patent and cites our precedent at the time holding that upon finding no infringement the validity issue was moot, e.g., Morton International, Inc. v. Cardinal Chemical Co., 959 F.2d 948, 952, 22 USPQ2d 1231, 1235 (Fed.Cir.1992). Events have overtaken this argument. The Morton v. Cardinal case was taken by the Supreme Court[15] which disapproved this court's practice of vacating invalidity judgments. Thus, in the Cedarapids case, in accordance with the instructions of the Supreme Court, this court ruled on the validity of all claims of the '904 patent and no part of this decision can be deemed unnecessary. We did not address infringement.
 
 
 46
 The plaintiffs alternatively argued that if collateral estoppel may be raised as a defense at this stage in the proceedings, then we must remand to the trial court for a determination of whether the plaintiffs had a "full and fair opportunity to litigate" the validity of the Mendenhall patents in the United States District Court for the Northern District of Iowa. Under Blonder-Tongue, 402 U.S. at 333, 91 S.Ct. at 1445, the Court recognized this countervailing argument to acceptance of collateral estoppel in a particular case. Whether a patentee has had a full and fair opportunity to litigate may be a difficult decision in some instances, and "no one set of facts, no one collection of words or phrases will provide an automatic formula for proper rulings on estoppel pleas." 402 U.S. at 334, 91 S.Ct. at 1445. However, as held in NOK, 882 F.2d at 508, 11 USPQ2d at 1885, a remand is not always necessary to decide whether the patentee had a "full and fair opportunity to litigate." None is necessary here. All of the plaintiffs' challenges to the "fullness" or "fairness" of their trial before the Iowa court have been addressed and disposed of in our Cedarapids opinion.
 
 
 47
 Respecting Barber-Greene, Mendenhall argues that it would be unjust and inequitable to permit that defendant to dishonor its commitment to be bound by the validity outcome in the Astec case. We, of course, agree, but the commitment (if one was made beyond the legal consequence of its relationship to Astec) was to tie its fate to that of its parent. Barber-Greene is not bound by the Astec interlocutory judgment to a greater extent than Astec itself.
 
 
 48
 Barber-Greene's situation is at least as favorable for estoppel as that of the appellant in Thompson-Hayward v. Rohm & Haas, supra, who agreed to be bound by the final judgment in a parallel proceeding in which the patent was ultimately held invalid. Our holding that the Cedarapids invalidity judgment overrides the interlocutory judgment in Astec on principles of collateral estoppel also frees Barber-Greene of liability under the terms of its agreement.
 
 III.
 CONCLUSION
 
 49
 Having considered all arguments of Mendenhall, we conclude these appeals must be sustained. Because the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants. The liability judgments together with the awards of damages and the permanent injunctions awarded as relief for their infringement of the '904 and '905 patents are reversed.
 
 IV.
 COSTS
 
 50
 Each party will bear its own costs.
 
 
 51
 REVERSED.
 
 
 52
 MAYER, Circuit Judge, dissenting.
 
 
 53
 Because I believe the facts in these cases weigh heavily against the application of collateral estoppel, I dissent. Put simply, in Nos. 91-1317 and 92-1244, Astec has had every opportunity to challenge the validity of the patents asserted against it in this litigation. It had a full and fair trial, and validity was further explored in detail on an interlocutory appeal to this court. Mendenhall v. Astec Indus., Inc., 887 F.2d 1094, 13 USPQ2d 1956 (Fed.Cir.1989) (table). The result was that we affirmed that Astec had failed to meet its burden of proving the patents invalid. Mendenhall has a final judgment that its patents are not invalid as asserted against Astec, and that is the law of this case.
 
 
 54
 As a "matter of sound judicial practice" a court will adhere to its prior decision and generally refuse to reopen what has been decided unless there are "exceptional circumstances" that compel a departure from this "law of the case." Central Soya Co. v. George A. Hormel & Co., 723 F.2d 1573, 1580, 220 USPQ 490, 495 (Fed.Cir.1983). This "doctrine insures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness--a litigant given one good bite at the apple should not have [a] second." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900, 221 USPQ 669, 678 (Fed.Cir.1984) (citation omitted). Astec has had its bite at the apple.
 
 
 55
 The only "exceptional circumstance" relied upon by Astec is that it should be entitled to assert collateral estoppel against Mendenhall because of the result of Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 28 USPQ2d 1081 (Fed.Cir.1993), holding the patents invalid. Estoppel, however, is not appropriate in all cases where it might be interposed and its use is left to the sound discretion of the court. Blonder-Tongue Labs., Inc. v. University of Illinois Foundation, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). " 'Claims of estoppel in patent cases [are] considered on a case by case basis, giving due weight to any factors which would point to an unfair or anomalous result from their allowance.' " Id. at 319, 91 S.Ct. at 1437-38 (quoting brief of the United States). It should only be applied when a court determines it is "just and equitable to allow the plea of estoppel in the case before it." Id. at 334, 91 S.Ct. at 1445.
 
 
 56
 As explained by the Supreme Court, the primary reasons for the application of estoppel in patent cases are economic. The "question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." Id. at 328, 91 S.Ct. at 1442. The Court determined that the rule of Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), put an excessive financial burden on an alleged infringer if it were to pay the costs of a full defense in a suit brought subsequent to a patent being held invalid. There was also the opportunity for multiple relitigation by a patent holder to harass competitors, force settlements and unfairly attempt to expand its "monopoly." And the costs in terms of judicial resources expended in multiple infringement suits were important in imposing collateral estoppel in a later suit brought by the patent holder for infringement of the same patent previously held invalid.
 
 
 57
 None of these reasons supporting collateral estoppel are present here, and its use serves no legitimate purpose. This is not a case where a party is defending in a subsequent infringement litigation after a holding of invalidity. Astec itself has already had a full and fair opportunity for resolution of the validity issue. The ruling of invalidity in Cedarapids came after the final judgment on the merits of this case. Applying estoppel here would not save anything in the way of judicial resources. Of course, if Mendenhall attempted to bring a future suit, collateral estoppel would be entirely appropriate, but not here. The cows have left the barn, slamming the door now serves no purpose. The invocation of collateral estoppel in favor of Astec is not a "just and equitable" result.
 
 
 58
 In the Barber-Greene litigation, Nos. 91-1109 and 91-1131, the above considerations counsel against the application of estoppel against Mendenhall as well. Even more importantly, Barber-Greene waived any right it may have had to challenge validity, by collateral estoppel or otherwise, when it agreed to be bound by the result of the validity phase of the Astec litigation. Not only did Barber-Greene tell the district court, in seeking a stay of its case, that it would be bound by the ruling on validity in Astec, but it also filed a stipulation that the validity and enforceability of Mendenhall's patents were not at issue in their case and this stipulation was incorporated into the district court's final order and judgment.
 
 
 59
 The agreement to be bound is clear and enforceable and precludes Barber-Greene from challenging the validity of the patents in this appeal. See Foster v. Hallco Manufacturing Co., 947 F.2d 469, 474, 20 USPQ2d 1241, 1245 (Fed.Cir.1991) (policies of preserving the finality of judgments and of encouraging settlements support the ruling that a consent judgment of patent validity will be given subsequent preclusive effect). In deferring to the ruling in Astec about the validity of the patents, Barber-Greene gained the benefit of the stay in the district court, appropriately granted in the interest of judicial economy and in accordance with the public interest in the orderly and expedient settlement of disputes. Barber-Greene is bound by its stipulation on validity and should not be allowed to escape by raising collateral estoppel at this stage of the game.
 
 ORDER ON PETITION FOR REHEARING
 Sept. 14, 1994
 
 60
 The petition for rehearing is granted by the panel members in the majority but only for the purpose of making the following addition to note 11, p. 1580 of its opinion following the text of 28 U.S.C. 1292(c)(2):
 
 
 
 *
 Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994
 
 
 [1]
 Other pending suits include Mendenhall and CMI Corp. v. Standard Havens, Inc., No. 86-710-CIV-W-6 (W.D.Mo. filed June 4, 1986), and Mendenhall and CMI Corp. v. Bituma Constr. Equip. Co., No. C-86-1029 (N.D.Iowa filed June 6, 1986). The subject matter of the patents concerns hot asphalt mixing equipment
 
 
 [2]
 The nonprecedential opinion in Mendenhall v. Astec Indus., Inc., appears at 887 F.2d 1094, 13 USPQ2d 1956 (Fed.Cir.1989) (Astec II ), aff'g 13 USPQ2d 1913, 1988 WL 188449 (E.D.Tenn.1988)
 
 
 [3]
 See Cardinal Chem. Co. v. Morton International, Inc., --- U.S. ----, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (this court instructed to rule on properly raised issue of invalidity despite finding of noninfringement)
 
 
 [4]
 Mendenhall did not assert, inter alia, claim 13 against Barber-Greene
 
 
 [5]
 The collateral estoppel arose upon the district court's judgment of invalidity of the '904 and '905 claims in the Cedarapids case. That judgment having been affirmed by this court and review having been denied by the Supreme Court, we no longer have the situation of applying collateral estoppel based on a judgment that might be reversed. See Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 507-08, 61 L.Ed. 1148 (Court's affirmance of patent invalidity judgment in case decided same day "leaves our decision in this case [giving it preclusive effect] uncomplicated")
 
 
 [6]
 This court has adopted decisions of the United States Court of Claims as precedents. South Corp. v. United States, 690 F.2d 1368, 1370-71, 215 USPQ 657, 658 (Fed.Cir.1982) (in banc )
 
 
 [7]
 See note 5, supra
 
 
 [8]
 This conclusion is also supported by precedent from our sister circuits. See Aetna Casualty & Surety Co. v. General Dynamics Corp., 968 F.2d 707, 711 (8th Cir.1992) ("Collateral estoppel may be raised at any stage of the proceedings, so long as it is raised at the first reasonable opportunity after the rendering of the decision having the preclusive effect."); Cotton States Mut. Ins. Co. v. Anderson, 749 F.2d 663, 665 (11th Cir.1984) (collateral estoppel issue not waived even though not raised at trial level where appellee unable to do so because parties had filed appeal briefs prior to issuance of decision in other case)
 
 
 [9]
 Indeed, claim 13 was invalidated only after the hearings in these appeals
 
 
 [10]
 As indicated, Barber-Greene agreed it was bound by the ultimate validity decision against its parent in Astec
 
 
 [11]
 28 U.S.C. Sec. 1292(c)(2) provides that this court shall have exclusive jurisdiction
 of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.
 Contrary to Mendenhall's arguments, the Astec appeal on December 16, 1988, was taken as of right under the above statute. The subsequent order of the district court entered January 26, 1989, purportedly certifying the case for appeal under FRCP 54(b) was superfluous, if not void. See Sears Roebuck & Co. v. Mackey, 351 U.S. 427, 435 (1936). That order did not provide the basis for this court's jurisdiction over an appeal already properly before us.
 
 
 [12]
 We note that an interlocutory appeal from a permanent injunction, to the extent that it considers questions of validity and infringement (as in Simmons ), is identical in substance to an appeal brought under Sec. 1292(c)(2)
 
 
 [13]
 See Johns-Manville, supra; W.L. Gore & Assocs., Inc. v. Carlisle Corp., 529 F.2d 614, 617, 189 USPQ 129, 131 (3d Cir.1976); Stevenson v. Diebold, Inc., 422 F.2d 1228, 1229, n. 2, 165 USPQ 10, 11, n. 2 (9th Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970)
 
 
 [14]
 The rule against disturbing a final judgment is not an absolute bar in any event. However, because no final judgment had been entered, no issue is presented here of the possibility of relief from a final judgment under F.R.C.P. 60(b)
 
 
 [15]
 Supra, note 3