BRYSON, Circuit Judge,
concurring.
There is substantial force to Judge Nies’s analysis of the doctrine of equivalents issue in this case. But while I agree with much of what she says, I cannot join the disposition that she proposes.
This court’s law on the doctrine of equivalents has certainly evolved over time, and the first Hughes appeal comes from well back in this court’s history. It may well be that if we were writing on a clean slate we would view the doctrine of equivalents issue in this case differently now than the court did at that time. Because the first Hughes appeal decided the equivalents issue, however, we are not free to address the issue de novo, as if the first appeal had not occurred or as if it were merely an interesting historical byway in the seemingly endless course of this litigation. The law-of-the-case doctrine counsels strongly against one panel’s overturning an earlier panel’s resolution of the same issue in *1578 the same ease. Based on that doctrine, I join the opinion of the court in this case.
If the law-of-the-case doctrine is to have any substance, it must sometimes require a judge to uphold a ruling on a question that the judge would decide the other way if it were presented for the first time. In order to serve the interests of judicial economy, finality, and avoidance of “panel-shopping,” the doctrine strongly discourages reconsideration of issues that a previous panel has addressed, fully considered, and decided. See Roberts v. Cooper, 61 U.S. 467, 481, 20 How. 467, 15 L.Ed. 969 (1857) (“there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members”); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580, 220 USPQ 490, 495 (Fed.Cir.1983). Moreover, in patent cases, where Congress has made special provision for interlocutory appeals, see 28 U.S.C. § 1292(c)(2), adherence to the law-of-the-case doctrine is especially important, as there are more opportunities for a party dissatisfied with a ruling from one panel to seek a different result from a second.
As a general matter, courts apply the law-of-the-case doctrine except when the case for departure is exceptionally clear, either because the controlling law has changed or the earlier decision is clearly erroneous and would lead to manifest injustice. See Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582, 31 USPQ2d 1001, 1007 (Fed.Cir.), cert. denied, — U.S. —, 115 S.Ct. 582, 130 L.Ed.2d 496 (1994); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900, 221 USPQ 669, 679 (Fed.Cir.) (departures from the law of the case doctrine occur “very infrequently”; the clearly erroneous/manifest injustice exception is “stringent” and requires a “strong showing of clear error”), cert. denied, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); see also Smith Intern., Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576-80, 225 USPQ 889, 891-94 (Fed.Cir.), cert. denied, 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985). Whatever view I might take on the merits if the doctrine of equivalents issue in this case were before us for the first time, I do not think the prior disposition is so clearly erroneous or has so plainly been overtaken by subsequent developments that the law-of-the-case doctrine can be disregarded.
Judge Nies makes the separate point that, in light of the pendency of Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc. in the Supreme Court, the wisest course for us would be to suspend resolution of this appeal until the Supreme Court decides that case. To bring this long-pending litigation to a close on the eve of what might be a dispositive resolution of the doctrine of equivalents issue, Judge Nies argues, would be injudicious.
If I felt that the panel’s decision were the last stop on the voyage of this case, I might well agree with Judge Nies. But it is not the last stop. Besides seeking rehearing in this court, the government can petition for certio-rari from the Supreme Court, with a request that the Court hold the ease pending the disposition of Wamer-Jenkinson. Thus, our decision today is not likely to deprive the government of the chance for a favorable judgment by stealing a march on the Supreme Court.
But why should we issue this decision if the result will simply be to put the government to the task of going through additional procedural steps to keep the judgment from becoming final while the government is waiting for the Supreme Court to decide Warner-Jenkinson? There are several reasons. First, we have a number of issues to resolve in addition to the doctrine of equivalents question. The panel is unanimous as to all but one of those issues. The resolution of the other issues may be useful in limiting the points on which the parties are in disagreement (it may be too much to hope that resolving some of the issues will provide a meaningful impetus to settlement in this case, but more information is usually better than less). In addition, we cannot realistically suspend the proceedings in every case that could potentially be affected by the Wamer-Jenkinson decision, which may be as much as a year away. One of the unfortunate features of the doctrine of equivalents as it has developed over time is that it has come *1579 to play a crucial role in a large percentage of patent infringement actions. If we hold this case pending the Supreme Court’s decision in Wamer-Jenkinson, how could we justify not suspending the appeal in every case raising a plausible doctrine of equivalents claim that comes before this court over the next year? Finally, the government has not asked us to suspend this appeal, even though the Supreme Court granted certiorari in Wamer-Jenkinson several months ago. I assume that if the government felt strongly that its rights were at risk if this court should choose to apply law-of-the-case principles without awaiting a Supreme Court decision, we would have heard from government counsel by now. Absent a request for suspension, I agree that we should treat this case as we treat all others and decide it as soon as a disposition is ready, leaving the parties to protect their interests, if they choose, through the avenues of further review.